748 F.Supp. 97 (1990)
Clifford BURR, by his Parents and Next Friends, Kenneth BURR and Betty Burr, Plaintiff,
v.
Thomas SOBOL, As Commissioner of the New York State Department of Education, Defendant.
No. 86 Civ. 7164 (RLC).
United States District Court, S.D. New York.
August 31, 1990.
*98 BLS Legal Services Corp., Federal Litigation Clinic, Brooklyn, N.Y., for plaintiff; Kathleen A. Sullivan, of counsel.
New York Lawyers for the Public Interest, Inc., New York City, for plaintiff; Ellen M. Saideman, Herbert Semmel, of counsel.
Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendant; Martha O. Shoemaker, Asst. Atty. Gen., of counsel.

OPINION
ROBERT L. CARTER, District Judge.
Plaintiff moves, pursuant to the Handicapped Children's Act of 1986, 20 U.S.C. § 1415(e)(4)(B), for attorneys' fees and costs in the amount of $102,315.50. Defendant argues that the attorneys' fees should be substantially reduced and suggests the amount of $14,341.60.

I.
This case arrives at this point in the proceedings with a fairly long and complex background, with which familiarity is presumed, see Burr v. Ambach, No. 88 Civ. 7164 (RLC), slip op., 1987 WL19957 (Nov. 10, 1987) [1987 U.S.Dist.Lexis 10272], later proceeding, 683 F.Supp. 46 (S.D.N.Y.1988) (Carter, J.), rev'd, 863 F.2d 1071 (2d Cir. 1988), vacated Sobol v. Burr, ___ U.S. ___, 109 S.Ct. 3209, 106 L.Ed.2d 560 (1989), re-aff'd on reconsideration, 888 F.2d 258 (2d Cir.1989), cert. denied, ___ U.S. ___, 110 S.Ct. 1298, 108 L.Ed.2d 475 (1990), and so only the most basic facts will be recounted here.
Plaintiff is a severely handicapped young man. Prior to this litigation, he attended a private school for the blind and retarded at public expense pursuant to the Education of the Handicapped Act, 20 U.S.C. § 1415, et seq. ("EHA"). The school closed in June, 1984, and thereafter plaintiff engaged in administrative proceedings to obtain placement in another school. The administrative proceedings were protracted which caused plaintiff to lose nearly two full academic years of education. The New York State Commissioner of Education (the "Commissioner") refused to provide compensatory education beyond plaintiff's twenty-first birthday to make up for this delay. Plaintiff appealed this decision to this court in September, 1986, claiming that the delays in the hearing process violated his right under the EHA to a due process hearing, resulting in the loss of nearly two full years of education.
This court dismissed the case on Eleventh Amendment grounds. Thereafter, plaintiff appealed to the United States Court of Appeals for the Second Circuit which held that the Eleventh Amendment did not bar this action and issued an order granting plaintiff one year of compensatory education past the age of 21 years. The Commissioner petitioned the United States *99 Supreme Court for a writ of certiorari, which was granted. The Supreme Court vacated the judgement of the Second Circuit and remanded for further consideration in light of its recent decision in Dellmuth v. Muth, 491 U.S. 223, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989). The Second Circuit considered letter briefs of the parties regarding the applicability of Dellmuth to its prior decision, then re-affirmed its prior holding and reinstated its judgment. The Commissioner again petitioned the Supreme Court for a writ of certiorari, which was denied.
During the proceedings in federal court, plaintiff was represented by Brooklyn Law School Legal Services Corporation, Federal Litigation Clinic (Kathleen A. Sullivan and various law students, of counsel) and New York Lawyers for the Public Interest, Inc. ("NYLPI") (Lewis Golinker, Ellen M. Saideman, and Herbert Semmel, of counsel).
Plaintiff now moves for attorneys' fees and costs in the following amounts:[1]

 $ 20,287 District Court proceedings
 $ 26,828 First appeal to the Second
 Circuit
 $ 19,370 Opposing the first petition
 for certiorari
 $ 2,928.50 Proceedings on remand to
 Second Circuit
 $ 7,899 Opposing the second petition
 for certiorari
 $ 77,312.50 TOTAL on the Merits
 $ 4,635 Fee application in the Second
 Circuit
 $ 20,218 Fee application in the District
 Court
 $ 150 Costs
 $102,315.50 GRAND TOTAL

Plaintiff's requested attorneys' fees are set forth in detail by proceeding and attorney in Appendix I to this opinion.

II.
Under the EHA, a plaintiff must be a prevailing party to recover attorneys' fees. "`Plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-279 (1st Cir.1978)). It is clear that in this case the plaintiff achieved a significant victory.
Nevertheless, defendant argues that attorneys' fees are improper for time plaintiff spent opposing the first petition for certiorari which was granted by the Supreme Court and for the time plaintiff spent opposing the consolidation of this case with another. Defendant's position is incorrect. Although it is true that fees cannot be recovered for unsuccessful claims which are "distinct in all respects" from successful claims, Hensley v. Eckerhart, supra, 461 U.S. at 440, 103 S.Ct. at 1943, this is not an issue in this case as plaintiff seeks fees only for issues related to his claim for compensatory education. Regarding related claims, even if they all did not succeed, attorneys' fees are to be awarded by looking at the case as a whole and seeing who prevailed, not by having a separate fee award for each piece of the litigation. Hanrahan v. Hampton, 446 U.S. 754, 758-759, 100 S.Ct. 1987, 1989-1990, 64 L.Ed.2d 670 (1980).
Having determined that plaintiff is entitled to fees, the next step is to determine what constitutes a "reasonable fee." The accepted system is to start with the number of hours worked (excluding those which are excessive, redundant, or otherwise unnecessary) and multiply this by an appropriate hourly rate. Blum v. Stenson, 465 U.S. 886, 888, 104 S.Ct. 1541, 1543-44, 79 L.Ed.2d 891 (1984). After this base amount is derived, it may then be adjusted *100 upward or downward based on a number of factors, including, perhaps most importantly, results obtained.
Time spent by law students working on a case is properly reimbursable provided it is the prevailing practice in the community to bill separately for this time, as it is in New York. Missouri v. Jenkins, 491 U.S. 274, 109 S.Ct. 2463, 2471, 105 L.Ed.2d 229 (1989). Time spent on fee applications is also compensable. Gagne v. Maher, 594 F.2d 336, 344 (2d Cir.1979).

III.
Defendant's many complaints about the reasonableness of plaintiff's requested fee can be broken down into roughly three categories: the adequacy of the plaintiff's attorneys' time records, the reasonableness of plaintiff's attorneys' billing judgment, and the appropriateness of plaintiff's attorneys' hourly rates.

A.
Contemporaneous time records are necessary to receive attorneys' fees in this circuit. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir.1983). "These records should specify, for each attorney, the date, the hours expended, and the nature of the work done." Id. at 1148.
Defendant complains about the general inadequacy of plaintiff's attorneys' time records, particularly that various entries are undated or vague, and that different activities are lumped under the same time entry. Defendant is overly critical. Rather than looking at the big picture to see if the total time expended for each portion of this case was reasonable, defendant looks at each individual entry, and even individual parts of entries, in an attempt to determine if each one is itself reasonable. Courts have recognized that this is an unrealistic approach and should be discouraged. U.S. Football League v. National Football League, 704 F.Supp. 474, 477 (S.D.N.Y.), aff'd 887 F.2d 408 (2d Cir.1989), cert. denied, ___ U.S. ___, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990). See also Hensley v. Eckerhart, supra, 461 U.S. at 437, 103 S.Ct. at 1941 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended"). Although some of plaintiff's time records could have been better kepta fact not surprising given the volume of time records for a case of this size  over-all they are sufficiently detailed to allow the court to assess the reasonableness of the time spent.[2] Furthermore, any errors due to record keeping are more than accounted for by discounting the billable hours, a technique used both by plaintiff and by the court. See infra at 101.

B.
Defendant also complains about the adequacy of plaintiff's billing judgment, specifically of duplication of efforts and of being charged by attorneys for tasks which could be performed by non-attorneys. Defendant complains of multiple attorneys appearing in court and attending meetings and conferences, the instances where more than one attorney worked on drafting a set of papers, and the hours spent conferring with co-counsel or drafting memoranda to them.
Defendant also argues that no charges should be made for certain tasks which could be performed by non-lawyers. Specifically, defendant argues that proof reading, assembling a table of cases, filing and serving briefs, and cite checking should not be reimbursed at attorney rates. This argument has some merit. Although proof-reading and editing is properly an attorney's job, cite checking and assembling a table of cases could be performed by either an attorney or an experienced paralegal. Certainly if performed by an attorney, the proper billing rate is the rate appropriate *101 to an inexperienced attorney. Filing and serving briefs can be done by a clerk and should not be charged for at attorney rates.
As set forth in Appendix I to this opinion, plaintiff arrives at his requested amount of attorneys' fees by taking the actual hours worked, then discounting the time to eliminate for any duplicate efforts, unbillable time or other inefficiencies. Generally, the time worked by the attorneys is discounted only slightly, although it should be noted that none of the time Kathleen Sullivan, lead counsel on this case, spent meeting with law students working on the case was billed. Likewise, none of the time spent by Mina Kotkin, Director of the Federal Litigation Clinic at Brooklyn Law School was billed. The time worked by the law students in discounted substantially. For the law students, only the time researching, writing and editing is counted, and this number is then discounted by 35%.
In assessing the reasonableness of the hours billed, the difficulty and novelty of the issues involved are relevant considerations. The issue in this case  whether compensatory education was an appropriate remedy under the EHA  was one of first impression in this circuit. Although defendant complains of "excessive hours" for "simple matters," its statement is belied by the effort it expended in litigating this case. It opposed plaintiff at every bend and sought certiorari to the Supreme Court twice. Furthermore, contrary to defendant's suggestion, having more than one attorney is not uncommon or impermissible in complex cases. Indeed, it is instructive to note that defendant lists two persons as being on the case in the reported opinions. See 863 F.2d 1071 (2d Cir. 1988) and 888 F.2d 258 (2d Cir.1989).
An examination of the time records leads the court to the conclusion that the attorneys working on the case did not duplicate efforts. Although the attorneys may at times have done some non-legal work or legal work which could be performed by less skilled, and therefore less expensive, lawyers, this is adequately compensated for by the attorneys' discounted hours.
The law students, however, are another story. Given the number of law students (nine) working on this case and the fact that the students changed from semester to semester, a fair amount of duplication was inevitable. Equally inevitable was some inefficiency and waste. Although the court realizes that the hours for the law students have already been discounted by the plaintiff, they still seem too high. Courts have recognized that a percentage deduction approach to compensate for duplication is an acceptable approach. Northcross v. Board of Education, 611 F.2d 624, 636-37 (6th Cir.1979) ("In complicated cases, involving many lawyers, we have approved the arbitrary but essentially fair approach of simply deducting a small percentage of the total hours to eliminate duplication of services"). In this case, a 15% reduction in plaintiff's adjusted hours for the law students will correct for duplication and inefficiencies.

C.
Defendant also complains that the hourly fees charged are excessive. Plaintiff requests a fee of $160 per hour for Sullivan through 1988 and $175 per hour thereafter, $225 per hour for Semmel, $130 per hour for Golinker and Saideman, and $50 per hour for the law students.
All of the attorneys who worked on this case work for non-profit entities and do not customarily bill clients by the hour. Therefore, their hourly rates should be figured by comparison to the billing rates of comparable attorneys in the general run of cases in the same city, so long as the resulting billing rates are not so high so as to give the firm an unreasonable windfall. New York State Ass'n for Retarded Children, Inc. v. Carey, supra, 711 F.2d at 1151.
Plaintiff has submitted an affidavit from Stuart W. Gold, a member of the law firm Cravath, Swaine & Moore ("Cravath"), and a director and Chairman of the Board of NYLPI. Mr. Gold states that all the rates requested are below the rates his firm would charge and are reasonable. However, the fact that plaintiff requests less in *102 attorneys' fees than he would had he been represented by Cravath is not in itself persuasive evidence of the reasonableness of the requested fee. Cravath has the reputation as one of the finest law firms in the country and charges fees in accordance with this reputation. Plaintiff's attorneys' work in this case may well be at Cravath's level, and it is the court's opinion that plaintiff's attorneys' level of advocacy was very high indeed, but this does not necessarily mean that plaintiff is entitled to Cravath rates. Cravath has much higher overhead than plaintiff's lawyers, including luxury office space, 24 hour staffing, and a host of other amenities, which is reflected in the rate charged per hour. Instead of Cravath, for the purpose of determining the rate per hour for plaintiff's lawyers, the appropriate comparison is to a high quality, small to mid-sized law firm in New York City.
Lewis Golinker, at the time of the litigation a staff attorney with NYLPI, graduated from the Washington College of Law, American University in 1979. Following graduation, he clerked for a United States District Court Judge, then worked as a staff attorney with the National Veterans Law Center in Washington, D.C. and as an adjunct lecturer at the Public Interest Law Clinic of the Washington College of Law. He was with the NYLPI from 1981-1987. Mr. Golinker had seven years litigation experience at the time this case commenced and his rate of $130 per hour is justified.
Ellen Saideman graduated in 1982 from Columbia Law School. She was a litigation associate with the New York firm Lord, Day and Lord from 1982 to 1986, and then served as Deputy Director and subsequently Acting Director of the Equal Employment and Public Accommodation Division of the New York City Commission on Human Rights. She joined NYLPI as a staff attorney in 1988. At her time of involvement with this case, Ms. Saideman had six years litigation experience and accordingly the rate of $130 per hour is appropriate.
Herbert Semmel is the litigation director of NYLPI, a position he has held since 1984. He graduated from Harvard Law School, magna cum laude, in 1953 and has actively practiced litigation for more than 30 years. He was the director of the Center for Law and Social Policy's Health Law Project from 1974-1981, and served as the Director of the Center for Law and Social Policy from 1977-1979. He has been lead trial counsel in numerous test cases. In light of Mr. Semmel's extensive experience, $225 per hour is wholly justified.
Kathleen Sullivan is a 1977 graduate of the State University of New York at Buffalo Law School. Immediately after law school she was a VISTA attorney, then was a staff attorney with the Legal Aid Society of Oneida County from 1979-1982. Since 1982, she has taught clinical education programs at Cornell Law School and Brooklyn Law School. Counting clinical teaching, Ms. Sullivan had nine years litigation experience when this trial commenced.
Plaintiff requests an hourly rate for Ms. Sullivan of $160 for the years 1986-1988, and a rate of $175 thereafter. This seems a little high. At the time Sullivan became involved in this case, she did not have much more litigation experience than Saideman and Golinker had when they became involved. Ms. Sullivan's academic duties, including teaching the courses Federal Litigation Clinic and Rights of the Indigent, may well give her expertise in this area of the law, but, on the other hand, also mean that she devotes less time to actually litigating than she would if she only practiced. The fact that Sullivan was lead counsel also must be considered. As lead counsel, she had more responsibility and therefore is entitled to a higher rate than might otherwise be justified. Taking all these factors into consideration, a rate of $150 for the first two years and $160 thereafter seems appropriate.
Nine different law student interns worked on this case. All have substantially similar backgrounds of a college degree, one or two years of law school training, and some summertime legal employment. Fifty dollars per hour is an appropriate rate in New York City for their time. Quiles v. Perales, No. 86 Civ. 8468 (RLC), *103 slip op. at 10, 1989 WL 99819 (S.D.N.Y. August 21, 1989) [1989 U.S.Dist.Lexis 9942] (awarding $50 per hour to law students in New York city); Lenihan v. New York, 640 F.Supp. 822, 827 (S.D.N.Y.1986) (Conner, J.) (same); Cluett, Peabody & Co. v. CPC Acquisition Co., 863 F.2d 251 (2d Cir.1988) (awarding $150 per hour for recent law school graduate not yet admitted to the bar).

IV.
In sum, plaintiff is awarded attorneys' fees for the hours and at the rates as set forth in Appendix II to this opinion for a total of $94,906.50 plus costs of $150.
IT IS SO ORDERED.

APPENDIX I

 Calculation of Plaintiff's Requested Fee
 District Court: Complaint, Amended Complaint, Motion for
 Summary Judgment, Rule 54(b) motion.
 Name Hourly Gross Hours after Total
 Rate Hours Discount
 Sullivan $160 65.4 31.1 $ 4,976
 Golinker $130 10.1 9.5 $ 1,235
 Students $ 50 593.1 281.52 $14,076
 TOTAL 322.12 $20,287
 Second Circuit: Brief, Letter Addressing Jurisdictional Issues,
 Oral Argument.
 Name Hourly Gross Hours after Total
 Rate Hours Discount
 Sullivan $160 108.25 81.95 $13,112
 Loren $ 50 197.0 111.0 $ 5,550
 Saideman $130 73.02 50.7 $ 6,591
 Semmel $225 11.5 7.0 $ 1,575
 TOTAL 250.65 $26,828
 Supreme Court I: Brief in Opposition to Cert. Petition
 Name Hourly Gross Hours after Total
 Rate Hours Discount
 Sullivan $175 59.3 51.6 $ 9,030
 Saideman $130 31.1 24.0 $ 3,120
 Semmel $225 15.5 11.0 $ 2,475
 Students $ 50 157.7 94.9 $ 4,745
 TOTAL 181.5 $19,370
 Second Circuit II
 Name Hourly Gross Hours after Total
 Rate Hours Discount
 Sullivan $175 10.1 0 0
 Saideman $130 4.2 3.2 $ 416
 Students $ 50 96.8 50.25 $2,512.50
 TOTAL 53.45 $2,928.50
 Supreme Court II
 Name Hourly Gross Hours after Total
 Rate Hours Discount
 Sullivan $175 20.2 5.8 $1,015
 Saideman $130 27.3 22.0 $2,860
 Semmel $225 2.4 2.4 $ 540
 Students $ 50 120.2 69.68 $3,484
 TOTAL 99.88 $7,899

*104
 Attorneys Fees Motions: Second Circuit
 Name Hourly Gross Hours after Total
 Rate Hours Discount
 Sullivan $175 4.2 4.2 $ 735
 Saideman $130 46.0 30.0 $3,900
 Davidson $ 50 9.0 0 0
 TOTAL 34.2 $4,635
 Attorneys Fees Motions: District Court
 Name Hourly Gross Hours after Total
 Rate Hours Discount
 Sullivan $175 25.7 25.7 $ 4,497.50
 Semmel $225 9.3 8.3 $ 1,867.50
 Saideman $130 76.5 76.5 $ 9,945.00
 Students $ 50 121.8 69.16 $ 3,458.00
 Lapidus $ 50 12.5 7.5 $ 375.00
 Boorman $ 50 9.0 9.0 $ 450.00
 Diamond $ 50 2.5 0 0
 TOTAL 196.16 $20,218.00[3]

APPENDIX II

 Calculation of Attorneys' Fees Granted by the Court[4]
 District Court: Complaint, Amended Complaint, Motion for
 Summary Judgment, Rule 54(b) motion.
 Name Hourly Gross Hours after Total
 Rate Hours Discount
 Sullivan $150 65.4 31.1 $ 4,665
 Golinker $130 10.1 9.5 $ 1,235
 Students $ 50 593.1 239.29 $11,964.5
 TOTAL 279.89 $17,864.5
 Second Circuit: Brief, Letter Addressing Jurisdictional Issues,
 Oral Argument.
 Name Hourly Gross Hours after Total
 Rate Hours Discount
 Sullivan $150 108.25 81.95 $12,292.5
 Loren $ 50 197.0 94.35 $ 4,717.5
 Saideman $130 73.02 50.7 $ 6,591
 Semmel $225 11.5 7.0 $ 1,575
 TOTAL 234.0 $25,176
 Supreme Court I: Brief in Opposition to Cert. Petition
 Name Hourly Gross Hours after Total
 Rate Hours Discount
 Sullivan $160 59.3 51.6 $ 8,256
 Saideman $130 31.1 24.0 $ 3,120
 Semmel $225 15.5 11.0 $ 2,475
 Students $ 50 157.7 80.67 $ 4,033.5
 TOTAL 167.27 $17,884.5

*105
 Second Circuit II
 Name Hourly Gross Hours after Total
 Rate Hours Discount
 Sullivan $160 10.1 0 0
 Saideman $130 4.2 3.2 $ 416
 Students $ 50 96.8 42.71 $2,135.50
 TOTAL 45.91 $2,551.50
 Supreme Court II
 Name Hourly Gross Hours after Total
 Rate Hours Discount
 Sullivan $160 20.2 5.8 $ 928
 Saideman $130 27.3 22.0 $2,860
 Semmel $225 2.4 2.4 $ 540
 Students $ 50 120.2 59.29 $2,964.50
 TOTAL 89.49 $7,292.50
 Attorneys Fees Motions: Second Circuit
 Name Hourly Gross Hours after Total
 Rate Hours Discount
 Sullivan $160 4.2 4.2 $ 672
 Saideman $130 46.0 30.0 $3,900
 Davidson $ 50 9.0 0 0
 TOTAL 34.2 $4,572
 Attorneys Fees Motions: District Court
 Name Hourly Gross Hours after Total
 Rate Hours Discount
 Sullivan $160 25.7 25.7 $ 4,112.00
 Semmel $225 9.3 8.3 $ 1,867.50
 Saideman $130 76.5 76.5 $ 9,945.00
 Students $ 50 121.8 58.79 $ 2,939.50
 Lapidus $ 50 12.5 6.38 $ 319.00
 Boorman $ 50 9.0 7.65 $ 382.50
 Diamond $ 50 2.5 0 0
 TOTAL 183.32 $19,565.50

NOTES
[1] Following the first decision by the Second Circuit, plaintiff moved for attorneys' fees. The Second Circuit found that plaintiff's attorneys were entitled to fees for work performed and remanded the motion to this court for a determination as to the amount of the award. By stipulation of the parties, no award was made at that time. The motion currently before the court covers fees for all the work done in federal court on the compensatory education claim. Plaintiff has received $40,000 in attorneys' fees for proceedings at the administrative level pursuant to a settlement with the New York Institute for the Education of the Blind, and requests no fees from defendant for any work done on this case at the administrative level.
[2] Originally, Kathleen Sullivan provided typed time sheets which contained the same information, verbatim, as the original contemporaneous records which she kept. Although this satisfies the requirement for contemporaneous records, U.S. Football League v. National Football League, supra, 704 F.Supp. at 477, defendant objected and plaintiff has now provided Sullivan's personal diary containing the original records.
[3] Plaintiff has incorrectly totaled this column. The total amount should be $20,593.
[4] The highlighted figures are those which have been modified by the court and are different from plaintiff's request.